

FILED

3:52 pm, 4/17/25

U.S. Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| ROBERT "CHANCE" CASEY,<br><br>          Plaintiff,<br><br>     v.<br><br>GILLSON TRUCKING, INC., SANJ TRUCKING, INC., and GURJOT SINGH,<br><br>          Defendants. | Case No.  2:23-CV-00228-ABJ |

### ORDER ON DEFENDANTS' *MOTION FOR A PROTECTIVE ORDER PURSUANT TO F.R.C.P 26(c)*

This matter is before the Court on Defendants Gillson Trucking, Inc. ("Gillson"), Sanj Trucking, Inc. ("Sanj"), and Gurjot Singh's ("Mr. Singh") (collectively "Defendants") *Motion for a Protective Order Pursuant to F.R.C.P. 26(c)* ("*Motion*"). ECF No. 50. After reviewing the *Motion*, Plaintiff Robert "Chance" Casey's ("Mr. Casey" or "Plaintiff") *Response to Defendants' Motion* ("*Response*") (ECF No. 54), and being otherwise fully advised, the Court finds the *Motion* shall be **GRANTED IN PART** and **DENIED IN PART** for the reasons set forth herein:

#### BACKGROUND

This action involves a rear-end collision that occurred on U.S. Interstate 80 in Sweetwater County, Wyoming. ECF No. 1 ¶¶ 11–29. Plaintiff's *Complaint* alleges that Mr. Singh, driving a tractor trailer under the employ of Gillson and/or Sanj, crashed into the back of Mr. Casey's pickup truck "caus[ing] the rear of his vehicle to lift up into the air

and crash to the ground, causing severe and debilitating injuries to Mr. Casey." *Id.* ¶ 28. All told, the *Complaint* sets forth three causes of action: (1) Negligence against Mr. Singh; (2) Negligence and Vicarious Liability against Gillson; and (3) Negligence and Vicarious Liability against Sanj. *Id.* ¶¶ 36–62.[1]

Plaintiff served its first set of written discovery on Sanj and Gillson on December 10, 2024. Seventeen days later, Defendants provided notice that Plaintiff's discovery requests were improper and requested withdrawal of the discovery requests. ECF No. 50 at 4 ("Defendants provided an explanation as to each improper discovery request and the basis for the discovery not complying with the Federal Rules of Civil Procedure."). The parties conferred pursuant to Local Rule 37.1(b) but were unable to reach a resolution. The parties then requested an informal discovery conference with the undersigned. After conducting a conference with the parties, the Court granted Defendants leave to file a motion for protective order related to Plaintiff's first set of written discovery on Sanj and Gillson. *See* ECF No. 47.

In their *Motion*, Defendants argue that "Plaintiff's interrogatories and requests for production are improper as they do not seek information related to a specific subject or information that is at-issue and relevant to the motor vehicle accident but rather improperly try and state that an interrogatory or request for production seeks information related to a 'common theme.'" ECF No. 50 at 4. Defendants generally argue that Plaintiff's interrogatories exceed the numerical scope permitted by Federal Rule of Civil Procedure

---

[1] Plaintiff does have an outstanding *Motion for Leave to File First Amended Complaint* (ECF No. 59) currently pending before the Court. That motion is opposed. *See* ECF No. 60.

33. *See id.* at 5 ("Multiple interrogatories served contain multiple discrete subparts and therefore if responded to, each subpart should be considered a separate interrogatory."). Additionally, Defendants argue that Plaintiff's requests for production contain far too many subparts, are irrelevant, overly broad and burdensome, vague, and not appropriately limited in scope. *See id.* 9–15.

Plaintiff responds by arguing that although his interrogatories contain various subparts, those subparts relate to the "common theme" of the overarching interrogatory, and thus, the subparts should be subsumed and counted as a single interrogatory for purposes of Rule 33's presumptive limit. ECF No. 54 at 6 (citing *United States v. Lain*, No. 17-CV-113-J, 2019 WL 2051961, at *4 (D. Wyo. Jan. 18, 2019)). In responding to the Defendants' arguments about requests for production, Plaintiff generally contends that "[t]he fact that Plaintiff has drafted detailed definitions is a practice consistent with ensuring clarity and eliminating ambiguity in the scope of the requests." *Id.* at 13. And "Plaintiff has used these definitions to ensure that each request is clear, comprehensive, and focused on gathering pertinent information to the case[, as not] to leave any room for the Defendants to claim vagueness, ambiguity, or dispute as to the meaning of the terms." *Id.*

## LEGAL STANDARDS

District courts have broad discretion over the control of discovery. *Cummings v. Gen. Motors Corp.,* 365 F.3d 944, 952 (10th Cir. 2004). "The purpose of this rule is to allow broad discovery of relevant information, even if that information is not admissible at trial." *Hedquist v. Patterson*, 215 F. Supp. 3D 1237, 1243 (D. Wyo. 2016). Broad discovery

is not unlimited however, and the court should consider the rights of both parties in exercising its discretion over discovery. *Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1520 (10th Cir. 1995); FED. R. CIV. P. 37(a).

## I. Protective Orders

A protective order requires a showing of good cause. FED. R. CIV. P. 26(c). The movant bears this burden and meets it by showing a need to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* "The 'good cause' standard of Rule 26(c) is 'highly flexible, having been designated to accommodate all relevant interests as they arise.'" *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (quoting *United States v. Microsoft Corp.*, 334 U.S. App. D.C. 165, 165 F.3d 952, 959 (D.C. Cir. 1999)). Typically, a "good cause" determination requires the Court to balance the party's need for the information and the injury that may occur from the requested disclosure. *Exum v. U.S. Olympic Comm.*, 209 F.R.D. 201, 206 (D. Colo. 2002). Ultimately though, issuing a protective order is in the sound discretion of the district court, and the appellate court "will not disturb a trial court's decision absent 'a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *Thomas v. IBM*, 48 F.3d 478, 482 (10th Cir. 1995) (quoting *United States v. Ortiz*, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986)).

### A. *Rule 33: Interrogatories*

Federal Rule of Civil Procedure 33 provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." FED. R. CIV. P. 33(a)(1). Rule 33 is silent

4

on what constitutes a "discrete subpart." *See id.* "However, courts use a 'common-theme' test to determine whether subparts count as a separate question or fall under the broader interrogatory." *Buster v. Bd. of Cty. Comm'rs for Lincoln Cty.*, No. 21-cv-01208 MLG/JHR, 2023 U.S. Dist. LEXIS 110353, *7 (D.N.M. June 27, 2023) (citation omitted). As this Court previously pointed out,

> [t]he authors of Federal Practice and Procedure offer some guidance with respect to how to determine whether a party's interrogatories containing multiple subparts should be construed as separate interrogatories. They state:
>
>> [A]n interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question, although the breadth of the area inquired about may be disputable. On the other hand, an interrogatory with subparts inquiring into discrete areas is likely to be counted as more than one for purposes of limitation.
>
> 8B Charles Alan Wright et al, *Federal Practice & Procedure* § 2168.1 (3d ed. 2010).

*Lain*, WL 2051961, at *4. In parsing this "common theme" test, courts have noted:

> Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone? Is it independent of the first question? Genuine subparts should not be counted as separate interrogatories. However, discrete or separate questions should be counted as separate interrogatories, notwithstanding [that] they are joined by a conjunctive word and may be related.

*Wildearth Guardians v. Public Serv. Co. of Colo.*, Civil Action No. 09-cv-01862-ZLW-MEH, 2010 U.S. Dist. LEXIS 138972, *4 (D. Colo. Dec. 29, 2010) (quoting *Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997)). "In other words, 'once a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from

5

the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated.'" *Id.* *4–5 (quoting *Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D.D.C. 2005)).

### B. Rule 34: Requests for Productions

Federal Rule of Civil Procedure 34 outlines requests for production. FED. R. CIV. P. 34. Such requests "must describe with reasonable particularity each item or category of items to be inspected…." FED. R. CIV. P. 34(b)(1)(A). The responding party "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B).

In contrast to Rule 33, Rule 34 contains no numerical limit on requests for production. *See id.*; *e.g.*, *Young v. United Fin. Cas. Co.*, No. 23-707, 2024 U.S. Dist. LEXIS 34969, *10 (E.D. La. Feb. 28, 2024).[2] Rather, Rule 34 provides that "[a] party may serve on any other party a request within the scope of Rule 26(b)." FED. R. CIV. P. 34(a).[3] Under Rule 26, parties are permitted to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED.

---

[2] However, a district court may, within its discretion, set a numerical limit on requests for production. *See, e.g.*, *Jaramillo v. Adams Cty. Sch. Dist. 14*, Civil Action No. 09-cv-02243-RPM-MEH, 2010 U.S. Dist. LEXIS 53350, *6 (D. Colo. May 6, 2010) (noting that the applicable scheduling order set a limit of 25 requests for production).

[3] *See* 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2206 (3d ed. Apr. 2025 update) ("Rule 34 is as broad in scope as any of the discovery devices and is in all respects an essential part of a liberal and integrated scheme for the full disclosure of relevant information between the parties that will facilitate the prompt and just disposition of their litigation. The rule authorizes the broadest sweep of access, inspection, examination, testing, sampling, copying, and photographing of documents, electronically stored information, or objects in the possession or control of another party.").

R. CIV. P. 26(b)(1). Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." FED. R. EVID. 401. The requested discovery needn't be admissible at trial; meaning, so long as discovery is relevant and proportional, it may be inspected under Rule 34—"unless it is privileged, or it has been prepared in anticipation of litigation or for trial, or it reveals facts known and opinions held by experts, or there are special reasons why inspection would cause annoyance, embarrassment, oppression, or an undue expense burden." 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2206 (3d ed. Apr. 2025 update). While Rule 34 is broad in scope, it is not boundless. *Id.* ("The breadth of Rule 34 of course does not mean that every document is ipso facto discoverable.").[4]

## ORDER OF THE COURT

### I. Interrogatory No. 1.

Interrogatory No. 1 generally seeks information related to the tractor trailer operated by Mr. Singh at the time of the subject crash. ECF No. 50-1 at 5.[5] This includes details about the truck's ownership, mileage, weight, maintenance, identification numbers, and

---

[4] *See Brandt v. Individual*, Civil Action No. 15-CV-02785-RM-NYW, 2018 U.S. Dist. LEXIS 245934, at *6 (D. Colo. May 22, 2018) ("In defining the scope of appropriate discovery, the Parties and the court are directed to consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.") (citation omitted).

[5] Throughout this Order, the Court cites to *Plaintiff's First Set of Discovery Requests to Defendant Sanj Trucking, Incorporated* (ECF No. 50-1). It should be noted that all the interrogatories and requests for production at issue appear in nearly identical form in *Plaintiff's First Set of Discovery Requests to Defendant Gillson Trucking, Incorporated* (ECF No. 50-2). Rather than repeatedly citing to both documents, the Court will only cite to the former. However, the Court's analysis and rulings as to each interrogatory and request for production apply equally to both sets of discovery requests.

information on any electronic logging devices ("ELD").[6] *Id.* In reviewing this first interrogatory, the Court finds that subparts (a)–(c) and (e) fit the common theme of details regarding the subject tractor trailer—that is, those questions relating to the truck itself all go to the common theme of identifying characteristics. However, the Court finds that subpart (d) is discrete.

Whether or not a truck has an ELD, and what type of ELD it has, could certainly fit the common theme of truck identification/characteristics, but the interrogatory veers into a wholly new area of inquiry when it requests that Defendants "state whether or not that data has been preserved and/or downloaded, and if so, when and by whom." *Id.* At this point, the interrogatory loses the thread of the subject truck's characteristics and becomes a standalone question regarding ELD information. Therefore, while subparts (a)–(c) and (e) shall be considered one interrogatory, subpart (d) shall be counted as a discrete interrogatory.

**II. Interrogatory No. 2**

Interrogatory No. 2 seeks information regarding Mr. Singh's hours of service ("HOS") "in the eight days leading up to the date of the Subject Incident…." *Id.* This interrogatory contains two subparts: "(a) Identify all HOS violations of which you are aware; (b) Explain what you have done, if anything, to audit or verify the accuracy of GURJOT SINGH's logs and identify all persons involved in the process." *Id.* The Court

---

[6] By ELDs, the Court means any type of monitoring or recording system within the tractor trailer, commonly referred to as the "black box."

finds that these subparts are discrete from the request for information as to Mr. Singh's HOS in the eight days leading up to the incident.

The overarching question, or theme, of Interrogatory No. 2 is the HOS in the eight days leading up to the incident. Asking Defendants to identify *all* HOS violations goes beyond the common theme espoused in the interrogatory. If Plaintiff had asked for information about any HOS violation within that eight-day window, the subpart would certainly be subsumed by the overall theme of the interrogatory; however, asking for information on *all* HOS violations goes beyond the common theme, and thus, subpart (a) constitutes a standalone interrogatory.[7]

As to subpart (b), the Court also finds it to be discrete. Subpart (b) seeks information about Defendants' internal auditing or verification process. While this area of inquiry is tangentially related to Mr. Singh's HOS, just as subpart (a), this subpart goes beyond the common theme of the interrogatory. More specifically, subpart (b) does not only seek information regarding how Mr. Singh's HOS were verified in the eight-day period leading to the incident, but rather, it generally seeks information about Defendants' internal process of verifying the accuracy of Mr. Singh's driver log.

As with subpart (a), if subpart (b) was confined to the eight-day window leading up to the incident, it would likely fall into Interrogatory No. 2's common theme. Simply put, as written subparts (a) and (b) are not subsumed by the thrust of the question, which

---

[7] It may be the case that Plaintiff is only seeking HOS violations within that eight-day window, but the subpart, as posed, appears to be far broader than that.

narrowly seeks information on Mr. Singh's HOS in the eight days leading up to the subject crash. Accordingly, Interrogatory No. 2 shall be counted as three interrogatories.

### III. Interrogatory No. 3

Interrogatory No. 3 seeks information regarding how Mr. Singh spent the 72 hours leading up to the incident. *Id.* at 6. This interrogatory has five subparts, including information about Mr. Singh's driving hours, off-duty hours, all stops, where and when meals were taken, and when and where he slept. In reviewing these subparts, the Court finds that they are each sufficiently related to the common theme of information of what Mr. Singh did in the 72 hours leading up to the incident. That is, the Court finds subpart (a)–(e) to be genuine subparts and secondary to the interrogatory as posed, as opposed to standalone interrogatories. As such, the Interrogatory No. 3 and its subparts shall be considered one interrogatory for purposes of discovery.

### IV. Interrogatory No. 14

Interrogatory No. 14 requests information as to "insurance or agreements with others to indemnify that may provide coverage for the claims set forth in Plaintiff's Complaint." *Id.* at 7–8. This interrogatory contains seven subparts. Defendants concede that subparts (a)–(e), the first five, are subsumed because the information sought "is readily contained on the declarations page of every policy." ECF No. 50 at 8. But they argue that "[s]ubparts (f) and (g) would each be considered a separate subpart and are not subsumed within the policy and each would be and are generally case specific." *Id.* Conversely, Plaintiff argues that subparts (f) and (g) "should be treated…as inquiries logically

subsumed within the overarching question into insurance policy information." ECF No. 54 at 11.

In reviewing Interrogatory No. 14, the Court finds that the common theme is whether Defendants have any insurance or agreements that may have implications on the instant suit. Subpart (f) asks Defendants to identify "whether or not Defendant SANJ TRUCKING is currently being defended under the provisions of such insurance policy or agreement[,]" and subpart (g) continues, "if so, whether such defense is being provided under any type of reservation of rights." ECF No. 50-1 at 8. Defendants argue that these two subparts should stand alone because they are "case specific," whereas the information requested in the preceding five subparts "is readily contained on the declarations page of every policy." ECF No. 50 at 8. However, the Court finds this argument unavailing. The test, as discussed above, is whether the subparts follow from, and are secondary to, the primary question posed, i.e., whether the subparts begin to drift into a line of inquiry that is separate from the "common theme" espoused. *Wildearth Guardians*, 2010 U.S. Dist. LEXIS 138972 at *4–5. Here, the Court finds subsections (f) and (g) are a natural continuation of the common theme that Interrogatory No. 14 inquires into. *See id.* The overall question seeks information about any insurance policy or agreement with an indemnifier that may provide coverage for Plaintiff's claims, and as a result, questions about whether Defendants are being defended under a policy of insurance and whether

11

such defense is being provided under any type of reservation of rights[8] are subsumed by the interrogatory's common theme regarding applicable insurance coverage.

## V. Ruling on the Interrogatory Portion of Defendants' *Motion*

All told, Plaintiff propounded 18 interrogatories to Sanj and 21 interrogatories to Gillson in his first set of discovery requests (ECF No. 50-1; ECF No. 50-2). In reviewing the objected-to interrogatories, the Court finds that there were three discrete subparts, not delineated as standalone interrogatories, that must be counted under Rule 33's limit. This brings the total number of interrogatories propounded to 21 for Sanj and 24 for Gillson. Because Plaintiff's interrogatories fall within the numerical limit of Rule 33, Defendants' *Motion* shall be denied as it relates to interrogatories.

## VI. Request for Production No. 1

Request for Production No. 1 ("RFP No. 1") seeks "[c]omplete paper, audio, and electronic files pertaining to the subject incident of August 22, 2023." ECF No. 50-1 at 9. The request contains a "definitions" section outlining the types of information sought. *Id.* Although RFP No. 1 does not contain an enumerated list of the information it seeks, Defendants aver that RFP No. 1 contains 11 subparts; Defendants take issue with this number: "[A]s with Plaintiff's Interrogatories, his Request[s] for Production do not actually state a request but poorly disguises an improper request under his 'common theme' argument. This Request seeks no less than eleven (11) separate and discreate subparts of

---

[8] Reservation of rights is a means by which prior to a determination of the liability of the insured, the insurer seeks to suspend the operation of waiver and estoppel. When **coverage** is in doubt, the insurer may offer to defend the insured, reserving all of its policy defenses in case the insured is found liable. Upon such notification the insured may either accept the reservation of rights and allow the company to defend or it may reject the reservation of rights and take over the defense itself. *City of Carter Lake v. Aetna Cas. and Sur. Co.*, 604 F.2d 1052, 1060, n.7 (8th Cir. 1979).

documents….» ECF No. 50 at 9. While Defendants argue that RFP No. 1 "should count as eleven (11) separate requests[,]" as noted above, requests for production under Rule 34 do not have a numerical limit, and as a result, the "common theme" test is inapplicable to Rule 34.[9]

Next, Defendants argue that RFP No. 1 is "overly burdensome, vague, ambiguous, and not appropriately limited in scope." *Id.* at 11. However, beyond this conclusory statement, Defendants offer little support that producing the discovery requested in RFP No. 1 would cause annoyance, embarrassment, oppression, or that it would be unduly burdensome or expensive. *See* FED. R. CIV. P. 26(c)(1). Further, Defendants do not argue that the requested discovery is privileged or irrelevant. To the Court, RFP No. 1 appears highly relevant to claims brought in this case, and Defendants have failed to show that it is irrelevant or not proportional to the needs of the case. By Plaintiff's own admission, RFP No. 1 is quite lengthy; however, the Court agrees that RFP No. 1 "is reasonably tailored to uncover evidence related to the incident." ECF No. 54 at 14. Further, Plaintiff notes that he is "open to narrowing the time frame or limiting certain subparts, provided that such adjustments do not undermine the comprehensiveness of the request." *Id.* Accordingly, the Court finds that to the extent Defendants' *Motion* seeks protection from RFP No. 1, it is

---

[9] The number of requests for production is a recurring theme in Defendants' *Motion*. In fact, Defendants argue that "they should be allowed to treat each Request for Production and the separate subparts as an individual Request for Production and should only have to answer the first thirty-five (35), as anything beyond that is unduly oppressive, burdensome, and only meant to harass Defendants." ECF No. 50 at 15–16. As Defendants offer no support for the proposed constraint, it is unclear where this 35-requests-for-production limit comes from. Rule 34 does not impose such a limit, nor does the Court's scheduling order (ECF No. 43) or its local rules. Accordingly, the Court must flatly reject Defendants' request to impose an arbitrary numerical limit on the requests for production in this case.

denied. Further, the Court orders conferral between the parties to discuss the parameters of RFP No. 1, bearing in mind the constraints on discovery as imposed by Rule 26(b)(1).

## VII. Request for Production No. 2

Request for Production No. 2 ("RFP No. 2") seeks information regarding "all prior incidents involving" Mr. Singh. ECF No. 50-1 at 10.[10] Defendants argue that "the request is not appropriately limited by a[] measurable time or scope therefore is impermissible and Defendants should be protected from responding." ECF No. 50 at 11. In reviewing RFP No. 2, the Court finds the requested information—i.e., information regarding Mr. Singh's prior incidents/accidents (if any)—is relevant to the instant suit. However, as written, RFP No. 2 is temporally vague and appears to seek information about prior conduct outside the scope of this suit. As to the timeframe, Plaintiff notes that he "is willing to work with the Court to establish a reasonable time frame and a framework to ensure that the production is not unduly burdensome." ECF No. 54 at 15. Therefore, Defendants' *Motion* as it relates to RFP No. 2, is granted. However, the Court grants Plaintiff leave to redraft RFP No. 2, and the Court orders the parties to confer and discuss an appropriate timeframe for RFP No. 2. The parties shall also discuss how to appropriately narrow RFP No. 2 to only include Mr. Singh's prior incidents that are relevant to this litigation.

## VIII. Request for Production No. 3

Request for Production No. 3 ("RFP No. 3") seeks training materials from Sanj and Gillson from 2022 to present. ECF No. 50-1 at 11. Defendants argue that RFP No. 3

---

[10] *See id.*; ECF No. 50 at 11 (arguing that RFP No. 2 should be counted as five requests for production).

contains three subparts, and thus, it should count as three requests for production. ECF No. 50 at 11–12. This is the beginning and end of Defendants argument on RFP No. 3. *Id.* That is, they do not argue that RFP No. 3 is irrelevant or not proportional to the needs of the case, nor do they argue that it is improper for any of the reasons contemplated in Rule 26(c)(1), i.e., that it would cause annoyance, embarrassment, oppression, or undue burden or expense. *See* FED. R. CIV. P. 26(c)(1).

In reviewing RFP No. 3, the Court finds it to be within the scope of discovery as outlined in Rule 26(b)(1). As Plaintiff points out, "[t]his request is highly relevant to the case because it directly addresses whether the trucking companies involved in the accident adhered to appropriate safety and training protocols." ECF No. 54 at 15. Further, as repeatedly noted, the sheer number of requests is not a cognizable basis for objection.[11] Therefore, to the extent Defendants' *Motion* seeks protection from RFP No. 3, it is denied.

### IX. Request for Production No. 6

Request for Production No. 6 ("RFP No. 6") seeks "[a]ll charts or other documentation/information showing the organization of SANJ TRUCKING for the time period of 2022 – present." ECF No. 50-1 at 11. Defendants argue that RFP No. 6 is irrelevant to any claim in this action:

> Plaintiff has asserted a claim for negligence against Defendant Singh. Plaintiff has also made a claim for vicarious liability against both Defendant trucking companies. The organizational chart how each company is owned is not relevant to any claim that the trucking Defendants are vicariously liable for Defendant Singh. Furthermore, Defendants have filed their Corporate Disclosure Statement which show that no other entity and/or public entity owns either Defendant. This request is meant for nothing more than to harass

---

[11] *See supra* note 7; ECF No. 50 at 11–12.

>and invade the privacy of each corporate Defendant and for no further litigation purpose. Therefore the exact hierarchy of individuals and their ownership is not relevant and Defendants should be protected from answering.

ECF No. 50 at 12.

Plaintiff argues that RFP No. 6 is intended "to provide insight into the structure of the companies involved, which is relevant to Plaintiff's claims of vicarious liability for both Defendant Motor Carriers and helps to elucidate the underlying insurance coverage picture, which is highly unusual in this case." ECF No. 54 at 16.

In reviewing RFP No. 6, the Court tends to agree with Defendants. As written RFP No. 6 is too broad, and thus, it is not proportional to the needs of this case. While Plaintiff's point about understanding Sanj's and Gillson's corporate structures for purposes of vicarious liability is well taken, RFP No. 6 seeks *all* documents and information related to the trucking companies, and it seeks a level of detail—i.e., the "hierarchy of the organization/entity, from drivers, to mechanics, to supervisors, to dispatch, to safety directors, to officers, up to owners, etc."—that goes beyond the needs of this case. Insofar as Defendants' *Motion* seeks protection from RFP No. 6, it is granted. However, Plaintiff is granted leave to redraft RFP No. 6 to more narrowly tailor its request to the organizational structure of Gillson and Sanj as it relates to the vicarious liability claims in this litigation.

## X. Request for Production No. 7

Request for Production No. 7 ("RFP No. 7") requests all information regarding the operations of Sanj and Gillson between 2022 and the present. ECF No. 50-1 at 11.

Defendants argue that these "operation documents…are not relevant to any claims asserted in this matter, which is limited to a simple rear end accident and whether the [Sanj and Gillson] are vicariously liable for [Mr.] Singh." ECF No. 50 at 12–13. Plaintiff counters that RFP No. 7 is "narrowly tailored to obtain information relevant to the issue of vicarious liability and the conduct of the employees involved." ECF No. 54 at 16–17. While RFP No. 7 appears to be, at least somewhat, relevant to the claims and defenses in this matter, as propounded, the request certainly contains vast swaths of information that is irrelevant. As such, the Court finds RFP No. 7 is too broad and not proportional to the needs of this case. *See* FED. R. CIV. P. 26(b)(1). Therefore, as it pertains to RFP No. 7, Defendants' *Motion* is granted, and Defendants need not answer RFP No. 7.

### XI. Request for Production No. 11

Request for Production No. 11 ("RFP No. 11") seeks "[a]ll documentation…pertaining to the subject truck and trailer during the time it was owned" by Gillson and Sanj. ECF No. 50-1 at 13. First, Defendants argue that this request seeks information related to two separate subjects, the semi tractor *and* its trailer. ECF No. 50 at 13–14.[12] Defendants also argue that none of the requested information is relevant because "neither Defendant has asserted that [] mechanical issue caused and/or contributed to the subject accident." *Id.* at 14. Plaintiff argues, and the Court agrees, that he "is entitled to investigate whether maintenance or inspection issues played any role in the incident." ECF

---

[12] *See supra* note 7; ECF No. 50 at 13–14 (arguing that RFP No. 11 contains 16 separate requests).

No. 54 at 17. Such an inquiry is relevant to Defendants' obligations under Part 396 of the Federal Motor Carrier Safety Regulations and the ultimate cause of the subject crash.

However, the Court agrees with Defendants that the RFP No. 11 should be temporally limited. To that end, the Court will deny Defendants' *Motion* as it relates to RFP No. 11, but it will require Plaintiff to limit the scope of RFP No. 11 to a period of 30 days before the subject crash (including, of course, the day of the crash).

## XII.  Request for Production No. 14

Request for Production No. 14 ("RFP No. 14") states in its entirety:

> Please produce a signed FMCSA PSP [("Pre-Employment Screening Program")] Privacy Waiver, which is attached hereto as Exhibit 2. In support hereof, the Plaintiff would show that the information available through PSP is relevant to the counts stated in the Complaint and that the Freedom of Information Act prevents the USDOT from providing the requested driver history without the signed form.

ECF No. 50-1 at 14. Defendants argue that because they have already produced Mr. Singh's driver qualification and employment file (containing everything that the Federal Motor Carrier Safety Act and the Department of Transportation require) RFP No. 14 is "irrelevant, improper, and seeks to harass Defendant Singh." ECF No. 50 at 15. Plaintiff argues that the PSP documentation is required to fully evaluate Mr. Singh's qualifications as a driver, his driving history, and fitness to operate a commercial vehicle. ECF No. 54 at 18. While RFP No. 14 may have some minimal relevance to the instant case, it is not proportional. As noted, Defendants have already turned over Mr. Singh's driving file, which contains information about his driving history and qualifications. Further, as Defendants argue, the PSP privacy waiver Plaintiff seeks is not "required to be maintained pursuant to FMCSR,

18

49 CFR Part 391." ECF No. 50 at 15. As such, to the extent Defendants' *Motion* seeks protection from RFP No. 14, it is granted, and Defendants need not respond.[13]

## Conclusion

Based upon the preceding, Defendants' *Motion* is **HEREBY GRANTED IN PART** and **DENIED IN PART**. The Court orders as follows:

- Defendants' *Motion* as it relates to the number of interrogatories propounded is **DENIED**. Defendants are **ORDERED** to respond to Plaintiff's outstanding interrogatories within seven (7) days of the issuance of this Order.

- Defendants' *Motion* as it relates to Plaintiff's requests for production is **GRANTED** as to RFP Nos. 2, 6, 7, and 14, and it is **DENIED** as to RFP Nos. 1, 3, an 11. As further explained above, the parties are **ORDERED** to meet and confer regarding certain requests for production. Responses to Plaintiff's requests for production are due seven (7) days after conferral and no later than May 1, 2025.

Dated this 17th day of April, 2025.

Scott P. Klosterman
United States Magistrate Judge

---

[13] Further, the Court believes the information requested in RFP No. 14 could be obtained through other discovery methods. *See* FED. R. CIV. P. 45.